# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYMOND C. FOSTER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1364** |
| **STATE OF LOUISIANA, ET AL.** | **SECTION "H"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It was recently reassigned to me. Record Doc. No. 6. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I. FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Raymond C. Foster, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Foster was indicted by a grand jury in the 22nd Judicial Court for St. Tammany Parish on February 18, 2009. The indictment charged Foster with second degree murder in violation of La. Rev. Stat. 14:30.1 in connection with the November 9, 2008 killing of Cynthia Lynch.[3]

Foster initially plead not guilty, and his trial commenced before a jury on May 3, 2010.[4] Opening arguments, sworn testimony and exhibits were presented to the jury. However, on May 5, 2010, on the third day of trial and before its conclusion, Foster announced his desire to change his plea to guilty as charged. The state trial court immediately conducted the required hearing, Foster testified under oath, and the court accepted his plea of guilty as charged to second degree murder. Foster waived all delays and was sentenced at that same hearing on May 5, 2010 to life in prison at hard labor without the benefit of parole, probation, or suspension of sentence.[5]

No direct appeal was taken. Thus, Foster's conviction became final 30 days later, on June 4, 2010, when his direct appeal period lapsed and he did not file any appeal or

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 2 of 2, Indictment, 2/18/09.

[4]St. Rec. Vol. 1 of 2, Trial Minutes, 5/3/10.

[5]St. Rec. Vol. 2 of 2; Guilty Plea and Sentencing Transcript, 5/5/10.

seek reconsideration of his sentence.  <u>Roberts v. Cockrell</u>, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); <u>see</u> <u>Cousin v. Lensing</u>, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[6]); La. Code Crim. P. art. 13 (weekend not included in the calculation of a period less than seven days).

About nine (9) months later, on March 7, 2011, Foster signed an application for post-conviction relief in the state trial court, which was filed by the clerk of court on March 14, 2011, asserting one ground for relief: His trial counsel provided him with ineffective assistance when "they induced him to forgo (sic) his right to trial by jury, and plead guilty in the middle of trial, based on an erroneous assumption that the State would arrest his wife and seek prosecution of [his] son on the same offense, when the State had no intention of taking such action against them."[7]

---

[6]The <u>Cousin</u> court recognized that the failure to move timely for appeal under La. Code Crim. P. art. 914 render the conviction and sentence final at the expiration of that period.  <u>State v. Counterman</u>, 475 So.2d 336, 338 (La. 1985).  At the time of <u>Cousin</u>, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment being appealed or of a ruling on a timely motion to reconsider a sentence.  Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

[7]St. Rec. Vol. 1 of 2, Application for Post-Conviction Relief, 3/14/11 (dated 3/7/11), at p. 1 of supporting memorandum.

On March 17, 2011, the state trial court issued an order denying Foster's application for post-conviction relief, stating that Foster had "knowingly and intelligently waived his Constitutional rights and admitted his guilt"[8] and also citing La. Code Crim. P. art. 929.[9] The Louisiana First Circuit denied Foster's subsequent timely writ application on July 18, 2011, without stated reasons.[10] The Louisiana Supreme Court denied Foster's timely related writ application without stated reasons on April 27, 2012.[11]

## II.    FEDERAL HABEAS PETITION

On May 29, 2012, the clerk of this court filed Foster's petition for federal habeas corpus relief, which Foster had signed on May 9, 2012, in which he asserted a single claim for relief: His counsel provided ineffective assistance of counsel "when they induced him to forgo (sic) his right to trial by jury, and plead guilty in the middle of trial, based on an erroneous assumption that the State would arrest his wife and seek

---

[8]St. Rec. Vol. 2 of 2, Trial Court Order, 3/17/11.

[9]La. Code Crim. P. art. 929 provides in relevant part as follows:
A. If the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief without further proceedings.

[10]St. Rec. Vol. 1 of 2, 1st Cir. Order, 2011-KW-0708, 7/18/11.

[11]State ex rel. Foster v. State, 86 So.3d 615 (La. 2012); St. Rec. Vol. 1 of 2, La. S. Ct. Order, 2011-KH-1770, 4/27/12.

prosecution of his son on the same offense, when the State had no intention of taking such action against them."[12]

The State filed a response in opposition to Foster's petition conceding timeliness and exhaustion.[13] The State argues that Foster's claim is without merit and that relief should therefore be denied.

III.  STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[14] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Foster's petition, which, for the footnoted reasons, is deemed filed in this federal court on May 9, 2012.[15]

---

[12]Rec. Doc. No. 1-1, p. 4.

[13]Rec. Doc. No. 11 at pp. 3-4.

[14]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[15]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Foster's petition was filed by the clerk of this court on May 31, 2012, when pauper status was granted. Foster dated and signed his

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State concedes, and I find, that the federal petition was timely filed, since Foster had properly filed state court proceedings pending at all relevant times that tolled the one-year AEDPA statute of limitations. 28 U.S.C. § 2244(d)(2). Foster's state court remedies have also been exhausted through the Louisiana Supreme Court.

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and

petition on May 9, 2012. This is the earliest date on which he could have delivered his pleadings to prison officials for mailing and which I will assume is the filing date for purposes of the mailbox rule.

the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## IV.    PETITIONER'S CLAIM(S) FOR RELIEF

In this case, Foster's pro se written submissions assert a single claim that his two trial attorneys provided ineffective assistance of counsel.[16] Foster's supporting memorandum summarizes his single claim in the same way he presented it to the state courts: "Petitioner's trial counsels (sic) were constitutionally ineffective when they induced him to forgo (sic) his right to trial by jury, and plead guilty in the middle of trial, based on an erroneous assumption that the State would arrest his wife and seek prosecution of his son on the same offense, when the State had no intention to taking such action against them."[17] Thus, although Foster frames his ground for relief in terms

---

[16]Record Doc. No. 1 (AO Form 241 Petition at p. 6, ¶ 12).

[17]Record Doc. No. 1 (Memorandum in Support at p. 4).

of a single claim, his petition, construed broadly,[18] presents the argument that his constitutional rights were violated on two separate – though clearly related – bases: (1) his guilty plea was not knowingly and voluntarily obtained, and (2) ineffective assistance of counsel. The legal standards applicable to these two constitutional principles are different and are therefore separately set out below.

(A)     ASSISTANCE OF COUNSEL

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

_____

[18]Pro se pleadings must be broadly construed, Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have broadly construed the petition in this case.

Under Hill v. Lockhart, 474 U.S. 52, 57 (1985), which applies Strickland in the guilty plea context, the first prong is satisfied by a showing that "counsel's representation fell below an objective standard of reasonableness." The Hill Court stated: "In order to satisfy . . . [Strickland's] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a

federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

The United States Supreme Court has recently clarified that, on habeas review under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689). This court must

apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

(B)    VOLUNTARINESS OF GUILTY PLEA

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000) (citing James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995)). A prisoner generally may not

"collaterally attack a voluntary and intelligent" plea. Taylor v. Whitley, 933 F.2d 325, 329 (5th Cir. 1991). "If a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead . . . without being coerced to do so, the . . . plea . . . will be upheld on federal review." Frank v. Blackburn, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), modified on other grounds, 646 F.2d 902 (5th Cir. 1981).

A plea therefore "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" Id. (quoting Brady, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. See Amaya, 111 F.3d at 389.

A plea qualifies as intelligent when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process .'" Bousley, 523 U.S. at 618 (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). A "plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an

admission of guilt." James, 56 F.3d at 666 (citing Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976)).

As the United States Fifth Circuit has noted,"when a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea." McKenzie v. Wainwright, 632 F.2d 649, 651 (5th Cir.1980). To establish that a breach of a plea agreement has occurred, a petitioner must prove: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise. Hayes v. Maggio, 699 F.2d 198, 203 (5th Cir. 1983).

While the validity of a guilty plea is a question of law, United States v. Hernandez, 234 F.3d 252, 254 (5th Cir. 2000) (citing United States v. Amaya, 111 F.3d 386, 388 (5th Cir. 1997)), questions of "historical fact," including inferences properly drawn from such facts, may render the voluntariness issue a mixed question of law and fact. Parke v. Raley, 506 U.S. 20, 35 (1993) (citing Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983)).

(C)    ANALYSIS OF FOSTER'S CLAIM(S)

Foster argues that his two trial attorneys provided ineffective assistance because they induced him to plead guilty during trial to avoid either the arrest of his wife or the

prosecution of his son for the murder with which he was charged.  In the memorandum submitted in support of his petition, Foster combines these two principles into a consolidated argument.  He contends that his guilty plea was unlawfully induced and otherwise misguided by counsel. He claims that his guilty plea was predicated on his understanding that he was doing so "in order to protect [his wife and son] from arrest and prosecution."[19]  Foster claims that, had he known that "the State had no intentions of seeking prosecution of Petitioner's wife and son," and had his attorneys not "insisted [nevertheless] that the State 'could' still charge them," he would not have entered the plea.[20]  The State responds that the transcript of his guilty plea proceedings and the conference that preceded the plea establish that Foster entered the plea voluntarily and with full knowledge that neither his wife nor his son were in jeopardy of being prosecuted or arrested.

I find that Foster's argument that his guilty plea was invalidly induced by the ineffective assistance of his counsel is wholly undermined by the clear record; specifically, that he knew <u>before</u> his guilty plea was accepted that the State had no evidence against his wife; that a no true bill had already been returned as to his son; and that defense counsel were instrumental in assuring the clarity of the record on this point

---

[19]Record Doc. No. 1, Memo in Support at unnumbered p. 5.

[20]<u>Id.</u> at unnumbered p. 7.

before his guilty plea was accepted. Under these circumstances, it cannot be concluded that the state courts' decisions upholding his guilty plea were contrary to or involved an unreasonable application of clearly established Supreme Court precedent.

Part of Foster's argument is that after the trial testimony of one of the State's witnesses against him, he met with his counsel and wife in private, and decided to plead guilty to protect his wife and family after his counsel told him the State "could" prosecute them. Although no evidence of this conversation has been submitted, the record is clear that, if it occurred, it was followed first by a recorded conference with the prosecutor and the presiding judge in chambers and then a hearing in open court, both of which were on the record and attended by defendant in person with his counsel, during which the State's intention <u>not</u> to prosecute Foster's family members was plainly made known and explained to Foster.

The May 5, 2010 proceedings – both in chambers and in open court – concerning Foster's guilty plea were recorded by the court reporter and the transcript is in the state court record in several places. The proceedings began as follows:

> By Mr. Oubre [Assistant District Attorney]: Judge, we're on the record in chambers. . . . We're obviously in the middle of a jury trial.

> * * * * *

> By Mr. Linder [defense counsel]: Kevin Linder on behalf of Mr. Foster.

By Mr. Alford [defense counsel]: Bill Alford. Mr. Foster is present . . . .

By Mr. Linder: Your honor, it's come to our attention that Mr. Foster is going to tender a plea of guilty as charged to second degree murder, but it's his concern – and we brought this up with the state – that as a result of that plea or as part of that plea, he wants to just understand that there will be no prosecution against his wife, Teresa Foster, and his son, Chris Foster.

\* \* \* \* \*

By Mr. Oubre [Assistant District Attorney]: Judge, for the record, Chris Foster [defendant's son], the facts surrounding his case and the evidence either against him or not against him was presented to a Grand Jury and, in fact, he was no true billed.

Teresa Foster [defendant's wife] was never arrested. I know of no basis for anything against Teresa Foster. There's no evidence that she was ever on the scene. . . . She was out of the loop, so to speak, . . .

In our possession right now there's nothing to support a charge against Teresa.

By the Court: This is not a consideration for plea; it's just a clarification –

By Mr. Linder [defense counsel]: We just want to make sure.

By Mr. Alford [defense counsel]: A clarification.

By the Court: – that they don't intend to prosecute, but it's not a consideration for the plea.

By Mr. Linder: Correct.

By Mr. Alford: He's pleading guilty, Your Honor, because he's guilty.

By the Court:  Thank you. Anything else.

By Mr. Oubre:  No. sir.

By the Court: All right. We're going to go back out in the courtroom and take the plea.[21]

The in-chambers conference on the record was then adjourned briefly while the parties returned to the courtroom.  It was at that point, however, that the State's position had already been made clear to defendant himself, who was present when the explanation was given.  It was clear on the record at that time that while no prosecution was intended or even supportable, there was no guarantee and no agreement or consideration concerning future prosecution that was any part of defendant's guilty plea. Foster had not yet plead guilty, there was still a full opportunity for him to persist in a not guilty plea and return to trial, fully informed as to the then-current posture of his wife (no evidence against her <u>at</u> <u>that</u> <u>time</u>) and son (no true bill already returned) vis-a-vis the murder charge.

When the parties returned to the open courtroom, the proceedings were again recorded and later transcribed.  The defendant confirmed that he wished to enter a guilty plea, and he was placed under oath.  After giving his age (45) and describing the extent of his education (high school graduate equivalency degree and "a little college"), the

[21]St. Rec. Vol. 2 of 2, Transcript of Chambers Conference and Guilty Plea Hearing, 5/5/10, at pp. 2-4.

presiding judge asked: "Did anyone force you to give this guilty plea?" Foster responded, "Just my own conscience."[22]

The court then advised Foster of his rights to plead not guilty, to trial before a jury, to counsel and appeal. Foster was specifically advised of his rights against self-incrimination, to confront his accusers under oath, cross-examination by his counsel and the right to subpoena witnesses to testify on his behalf. Several times, he was asked if he understood his constitutional rights and told that by pleading guilty he was giving up those rights. Each time, he clearly acknowledged his full understanding and assent.[23]

Foster was twice asked if he was satisfied with his counsel and if he had been given a full opportunity to confer with them. He replied, "I had some well (sic) counseling here," and "I'm well satisfied."[24] He was specifically advised by the court of the definition of the offense of second degree murder to which he was pleading guilty and that if the court accepted his guilty plea, the judge would impose the mandatory statutory sentence of life in prison without benefit of parole, probation or suspension of sentence.[25] Over and over, Foster clearly acknowledged the nature of the offense to

---

[22]Id. at pp. 5-6.

[23]Id. at pp. 6-9.

[24]Id. at pp. 7, 10.

[25]Id. at pp. 9-11.

which he was pleading guilty and the penalty he would receive. The court also had the following exchanges with the defendant:

> By the Court: Do you understand you're convicting yourself out of your own mouth by pleading guilty?

> By Mr. Foster: Yes, sir, I do.

> *  *  *  *  *

> By the Court: Do you admit to the Court that you violated this statute [La. Rev. Stat. 14:30.1, second degree murder] on November 9, 2008, by the killing of Cynthia Lynch in the second degree?

> By Mr. Foster: Yes, sir.[26]

At the conclusion of the court's explanation of the offense, potential sentence and defendant's full panoply of constitutional rights; and after receiving defendant's clear testimony that he understood his rights and was willingly waiving them, that he understood his offense and potential sentence and that he nevertheless wished to plead guilty; the presiding judge, who had already heard and seen much of the State's evidence against Foster through the first few days of trial, found an adequate factual basis for the guilty plea; and that defendant was "freely, voluntarily and intelligently" pleading guilty. The court accepted his plea of guilty.[27]  Foster then requested permission, which was

---

[26]Id. at pp. 8, 9-10.

[27]Id. at pp. 12-13.

granted, to make a statement confirming his guilt, including the following pertinent remark:

> My statement goes to everybody involved. Ms. Lynch, I'm sorry for the loss of your daughter. I can't tell you how desperately I wish I could redo this whole thing. It would not have happened. I hope you find it in your heart to forgive me.[28]

I find that this record clearly establishes both a fully constitutional guilty plea and effective trial counsel. The plea was fully informed and intelligently given, without coercion or duress of any kind by the State or defense counsel. Contrary to petitioner's argument, he was never misinformed by his counsel about the status of any intended or possible prosecution against his wife and son. Instead, he was fully and honestly informed of their situation vis-a-vis the charge and the State's posture concerning them: a no true bill having been returned as to Foster's son concerning the murder and no evidence at that time of any involvement by his wife.

Significantly, the record makes clear that there was no plea agreement of any kind, and certainly no promise of any kind and no misrepresentation by defense counsel, concerning defendant's family members. Defense counsel's performance in no way fell below an objective standard of reasonableness when faced with a defendant who was clearly admitting his guilt after a substantial part of the State's case against him had been

---

[28]Id. at p. 13.

presented at trial.  Defense counsel fully vetted Foster's concerns about his wife and son, in his presence and on the record, with both the trial judge and the prosecutor.  The record establishes no reasonable probability that, but for defense counsel's performance, Foster would not have plead guilty.

Affording the actions of counsel and the state trial courts due deference, Foster has failed to establish that his counsel acted in violation of the <u>Strickland</u> standards.  He is not entitled to relief on his ineffective assistance of counsel claim.  In addition, the record is clear that his guilty plea was knowing, voluntary, fully and accurately informed and therefore constitutional.  Foster has failed to establish that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, Supreme Court law.  He is not entitled to relief in this case.

<u>**RECOMMENDATION**</u>

For the foregoing reasons, it is **RECOMMENDED** that the petition of Raymond C. Foster for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[29]

New Orleans, Louisiana, this ___13th___ day of August, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[29]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.